UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JOHN RENNA,

                Plaintiff,

    -against-

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 06-CV-055(FB)

*Appearances:*

*For the Plaintiff:*
DOUGLAS C.J. BRIGANDI, ESQ.
214-11 Northern Blvd.
Suite 201
Bayside, NY 11361

*For the Defendant:*
ROSLYNN R. MAUSKOPF, ESQ.
United States Attorney
By: SOM RAMRUP, ESQ.
Assistant United States Attorney
One Pierrepont Plaza – 14th Floor
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

        Plaintiff, John Renna ("Renna"), a former auto mechanic, seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB"). Both parties move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The Commissioner's motion is granted.

### I.

        This is the second time this case has appeared before the Court; its prior factual and procedural history is set forth in *Renna v. Barnhart*, 2003 WL 21005281 (E.D.N.Y. May 2, 2003), familiarity with which is presumed. In its May 2, 2003 Memorandum and

Order, the Court ordered that

> the case be remanded for an ALJ to properly develop evidence regarding the limitations caused by Renna's left-hand numbness prior to June 30, 1998, his date last insured, and to pose hypotheticals to a [vocational expert] based upon the reassessment of Renna's [residual functional capacity] [and] to bring the record current by considering complaints [regarding right-hand pain and left-hand numbness] raised by Renna during his hearing before the second ALJ.

*See id.* at *4.

On remand, a hearing was held on February 24, 2004. The ALJ heard testimony from Renna, focusing, as directed, on his claims of left-hand numbness. Based on Renna's testimony, as well as the evidence adduced at the prior hearings, the ALJ posed two hypotheticals to a vocational expert ("VE"); both were based on a person of Renna's age, education level and vocational background who had "no problem standing, sitting or walking." A.R. at 467.[1] The first hypothetical described a person with limited use of *both* hands:

> [W]ith the dominant right hand, occasional non-repetitive fine manipulation, occasional lifting [up to] one-half pound. Left hand, frequent, but not repetitive fine manipulation, lifting occasionally up to five pounds, frequently one to two pounds, but not repetitively either.

*Id.* The VE opined that the person described in that hypothetical would not be able to perform any jobs in the national economy.

The ALJ's second hypothetical excluded any left-hand limitations:

> I have to make a finding that this left hand problem began, and was documented before June of 1998. So, I'll give you the

---

[1] "A.R." refers to the Administrative Record.

same hypothetical, but on the restrictions I indicated with the right hand *and none with the left*.

A.R. at 468. The VE testified that a person fitting that description *could* perform jobs existing in the national economy, and offered three examples: (1) telephone quotation clerk (sedentary work, with 1,617 regional jobs and 7,818 nationwide); (2) school crossing guard (light work, with 2,500 regional jobs and 200,000 nationwide); and (3) ticket seller (light work, with 9,279 regional jobs and 106,950 nationwide). *See* A.R. at 469-470. The ALJ then asked the VE whether such a person could also perform the work of system surveillance monitor:

> Q: What about that old standby system surveillance monitor?
>
> A: Of course, we know those are *little [in] number, though, that's why I never* –
>
> Q: All right. What's that?
>
> A: A DOT code is 379.367-010, SVP 2, unskilled at a sedentary level. Approximately 200 in the region, 2,746 in the national economy.

A.R. at 470 (emphasis added).

In a decision dated March 26, 2004, the ALJ reviewed the evidence and made the following findings:

> [1] The claimant . . . was insured for [DIB] only through June 30, 1998, and not thereafter.
>
> [2] The claimant is considered to have not engaged in work considered to amount to substantial gainful activity since November 3, 1992, the alleged onset of disability.
>
> [3] The claimant has a "severe" impairment.

3

[4] The medically determinable impairment or impairments do not clearly meet or medically equal one of the listed impairments [considered *per se* disabling under the Commissioner's regulations].

[5] The claimant is a younger individual.

[6] The claimant has a limited level of formal education and he is literate in the English language.

[7] The claimant has the residual functional capacity for a range of sedentary work activity, through at least June 30, 1998, with limited use of his dominant right arm and no limitation for the left arm.

[8] The claimant is unable to perform any of his skilled and exertionally heavy past relevant automobile mechanic type of work and has no transferable skills.

[9] The claimant had the residual functional capacity to perform a significant range of sedentary work.

[10] Although the claimant's exertional limitations did not allow him to perform a full or broad range of sedentary work activity . . . , there were a significant number of jobs in the American economy that [he] could have performed through the date last insured. Examples were provided in the testimony of the vocational expert at the [February 24, 2004] hearing.

A.R. at 390 (citations omitted). Based on these findings, the ALJ concluded that Renna was not "disabled" within the meaning of the Social Security Act and was, therefore, not entitled to DIB.

The ALJ's decision was affirmed by the Appeals Council, thereby rendering the Commissioner's decision final. Renna has timely sought judicial review.

## II.

Renna argues that the Commissioner's determination should be reversed for two reasons. First, he challenges the ALJ's determination that he was required to establish that the claimed limitations on the use of his left arm existed on or before June 30, 1998. Second, he contends that even if June 30, 1998, were the relevant date, the ALJ's determination that no left-arm limitations existed as of that date was not supported by substantial evidence. The Court addresses those arguments in turn.

### A.

As an insurance program, DIB requires that a claimant have coverage at the time the claimant becomes disabled. *See Arnone v. Bowen*, 882 F.2d 34, 35 (2d Cir. 1989) ("To be eligible for disability insurance benefits, an applicant must be 'insured for disability insurance benefits.'" (quoting 42 U.S.C. § 423(1)(A))). Such coverage – also known as "insured status" – depends on the number of quarters in which a claimant has earned a specified minimum amount of wages (or self-employment income), the social-security taxes withheld from such earnings constituting a sort of insurance premium. *See id.* (citing 20 C.F.R. § 404.101(b) & §§ 404.140-404.146). Under what is colloquially known as the "20/40 rule," the "insured status" requirement is satisfied only if the claimant earned the required amount of wages in 20 out of the 40 quarters preceding his or her disability. *See id.* (citing 20 C.F.R. § 404.130(b))

As Renna points out, "periods of disability" are excluded from the "20/40" calculation. *See* 20 C.F.R. § 404.320(a) ("If we establish a period of disability for you, the months in that period of time will not be counted in figuring your average earnings."). "A

5

'period of disability' can only commence, however, while an applicant is 'fully insured.'" *See Arnone*, 882 F.2d at 38. Moreover, to claim a period of disability, "an applicant must 'file an application while disabled, or no later than 12 months after that month in which [the] period of disability ended.'" *Id.* (quoting 20 C.F.R. § 404.320(b)(3)).

It is undisputed that, absent any period of disability, Renna's insured status expired on June 30, 1998. Renna claims, however, that a twenty-eight month period should be excluded from the calculation as a "period of disability" because he was unable to work from the date of the injury – November 3, 1992 – until he had recuperated from surgery in February 1995. Renna's claim, if correct, would extend his insured status to October 2000; he asks the Court to remand the case to consider the possibility that more significant left-arm limitations developed by that date.

The Court rejects Renna's claim. First, Renna did not present it to the ALJ; indeed, in his closing statement, Renna's counsel asked the ALJ to "award[] the claimant benefits prior to June 1998, *which is the claimant's date of last insurance.*" A.R. at 479-80 (emphasis added). Second, even assuming that Renna's representation of his condition between November 1992 and February 1995 is true, it is insufficient to establish a "period of disability"; Renna first applied for benefits in April 17, 1996, which is more than 12 months after his claimed period of disability ended. Thus, the Court holds that the ALJ properly concluded that Renna's insured status expired on June 28, 1998, and, therefore, properly limited his consideration to impairments existing on or before that date.

**B.**

Renna's second argument – that the ALJ's determination that no left-arm limitations existed as of June 28, 1998, was not supported by substantial evidence – requires the Court to review the familiar five-step sequential analysis the Commissioner uses to determine whether a claimant is entitled to DIB. *See Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir. 1999) (citing 20 C.F.R. § 404.1520). Each step of the analysis must be supported by "substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971) (internal quotation marks omitted). The burden of persuasion rests on the claimant at steps one though four; it shifts to the Commissioner at step five. *See Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) ("If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working.").

Here, it is undisputed that Renna has not worked since 1992. It is also undisputed that his right arm and hand are essentially useless, and that, because of those impairments, he cannot perform his past work as an automobile mechanic. Thus, steps one through four, having been decided in Renna's favor, are not at issue; the sole issue is whether the ALJ's step-five determination that Renna could perform work in the national economy as of June 30, 1998, is supported by substantial evidence.

In challenging the ALJ's step-five determination, Renna focuses exclusively on the ALJ's finding that he had "no limitation for the left arm." A.R. at 390. There is,

7

however, substantial evidence in the record to support that finding. First, Renna's allegation that his left hand impairment emerged in 1994 or 1995 is contradicted by the record. Renna was injured on November 3, 1992, when an engine manifold fell on his right wrist. When he first applied for DIB in 1996. Renna claimed that he was disabled only due to this injury; at the first hearing before an ALJ held on June 11, 1997, Renna failed to mention any left hand impairment. It was only at *subsequent* hearings – on December 16, 1998, and May 18, 1999 – that Renna claimed the onset this impairment:

> *And lately*, I've been having more trouble with the hands. My two hands, they fall asleep at night. When I wake up in the morning, they're both numb. I've been putting ice packs on my hands and wearing the splint [on the right hand], and I've been taking a lot of Motrin. . . . it's more the right hand than the left, but after a while, the hand – I guess circulation, it gets better during the course of the day.

A.R. at 432-433 (May 18, 1999 Hearing (emphasis added)); *see also* A.R. at 93-94 (December 16, 1998 Hearing). When asked, however whether he had sought any treatment for this alleged impairment, Renna replied that he had not. *See Arnone*, 882 F.2d at 39 (failure to seek medical attention undermines disability claim). He also conceded that he was able to perform numerous tasks with his left hand: "I brush my hair, wash my hair with my left hand, I dress with my left hand, I pull my clothes on and off with it." A.R. at 462. The record further reflects that, as of 1998, Renna was capable of driving a car, *see* A.R. at 187, 456; shoveling snow, *see* A.R. at 208; carrying shopping bags, *see* A.R at 455, 460, 463; and performing car repairs at home, *see* A.R. at 234, 235, 236.

Additionally, the *only* medical evidence documenting Renna's left hand numbness appears in the August 14, 1998 treatment note from treating physician Dr. Lane,

who concluded that while there was "[e]vidence of carpal tunnel syndrome on the right," the evidence was "questionable on the left." A.R. at 268. Dr. Lane stressed in this note that Renna's inability to return to his past work was due to his right wrist injury. Moreover, numerous medical examinations show that Renna's left hand grip strength was normal. *See, e.g.*, A.R. at 234, 235, 236, 242, 243, 252.

In light of this evidence, the ALJ was entirely within his rights to reject Renna's claimed left-hand limitations. *See Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir.1988) (ALJ is "free to accept or reject" a complainant's testimony, in whole or in part); *see also* 20 C.F.R. § 404.1529(c)(3)(i)-(iv) (when claimant alleges pain that exceeds objectively verifiable evidence, ALJ must consider several factors, including daily activities, medication, and causes of pain, in order to determine the extent to which pain affects claimant's capabilities). The Court therefore affirms the ALJ's finding that Renna had no limitations on the use of his left hand, and his consequent exclusion of those claimed limitations in determining that Renna was still able to perform "a range of sedentary work." A.R. at 390.

The only remaining issue, then, is whether there was sufficient evidence to satisfy the Commissioner's burden of proving that there were jobs in the national economy that someone with Renna's limitations could still perform. In this regard, the ALJ relied on the "[e]xamples ... provided in the testimony of the vocational expert" at the February 24, 2004 hearing. A.R. at 390. While Renna does not explicitly take issue with those examples, the Courts notes that two of the examples provided – school crossing guard and ticket seller – are classified as "light work," *see Dictionary of Occupational Titles* ("DOT")

371.667-010 (crossing guard) & 211.467-030 (ticket seller); since the ALJ found that Renna could perform only sedentary work, these examples do not support the ALJ's finding that Renna could still perform work in the national economy. *See Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984) (holding that evidence of jobs classified as "light work" did not satisfy step-five burden because claimant was limited to sedentary work).[2]

Moreover, although prompted by the ALJ to consider surveillance-system monitor (which is rated as sedentary work, *see* DOT 379.367-010), the VE expressed reservations about doing so due to the small number of such jobs. If faced with the issue, the Court would be reluctant to hold that such tentative testimony is sufficient to satisfy the Commissioner's burden at step five. *Cf. Franklin v. Apfel*, 8 F. Supp. 2d 227, 233-34 (W.D.N.Y. 1998) (court "not convinced" that Commissioner satisfied step-five burden where "the vocational expert admitted that the number of locally available jobs (four-hundred eighty), might not be a sufficient number to constitute a realistic employment pool").

Nevertheless, the fourth example given by the VE – telephone quotation clerk – is classified as sedentary work, *see* DOT 237.367-046, and exists in sufficient numbers (1,617 in the region and 7,818 nationally) to qualify as work existing in the national

---

[2]These examples could have been used to support the ALJ's step-five determination had the ALJ found that Renna retained a residual functional capacity for light work. Indeed, this was the determination made by the predecessor ALJ in 1999. *See* A.R. at 52. It is unclear why the ALJ, having determined that Renna's limitations were essentially the same as those found in 1999, nevertheless "downgraded" Renna to a residual functional capacity for only sedentary work. But downgrade him he did, and his step-five determination must therefore be supported by evidence of sedentary work.

economy. *See Wright v. Chater*, 969 F. Supp. 143, 148 (W.D.N.Y. 1997) (holding that approximately 1,700 jobs in region constituted "a significant number"). While the Court is mindful – and troubled – that the ALJ's step-five determination is supported by evidence of a single job, the Social Security Act affords benefits only to those who cannot "engage in *any* other kind of substantial gainful work which exists in the national economy," 42 U.S.C. § 423(d)(2)(A) (emphasis added); *see Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) (affirming step-five determination based on evidence of only one job). Thus, the VE's testimony that Renna could work as a telephone quotation clerk satisfied the Commissioner's step-five burden and supports the ALJ's determination that Renna could perform jobs existing in the national economy.

### III.

For the foregoing reasons, the Commissioner's motion is granted.

**SO ORDERED.**

/signed/
_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
February 21, 2007